IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES, | ) ) ) | CV 11-99-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| LESLIE WELDON, Regional Forester of Region One of the U.S. Forest Service, and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | ) ) ) ) ) | |
| Defendants. | ) ) | |

The plaintiffs move for attorney's fees for their successful litigation against

the Forest Service. Their motion is granted in part.

**BACKGROUND**

This case arises out of a dispute involving the Beaver Creek Project—a

proposed timber sale and prescribed burning on the Custer National Forest. The

plaintiffs challenged several aspects of the Project. They claimed that the Project

violated the National Forest Management Act ("NFMA") and the National

Environmental Policy Act ("NEPA") because it did not adequately protect elk

habitat, it failed to protect old growth, and was deficient for goshawk habitat. They also claimed that the Forest Service violated NEPA by failing to timely disclose the potential need for stormwater discharge permits under the Clean Water Act and by failing to consult with state agencies regarding those permits.

On March 26, 2012, the Court granted in part and denied in part the plaintiffs' and defendants' motions for summary judgment. The Court partially granted summary judgment in favor of the plaintiffs because the Forest Service failed to: (1) explain why it analyzed road density only at the Project level and ranger-district level, (2) explain why it applied the road-density standard to only Forest lands, (3) analyze road density during Project implementation, (4) identify the stormwater discharge permits that it might need to obtain for the Project, and (5) solicit comments on those permits from state agencies. The Court granted summary judgment in favor of the Service on all other claims.

The Court enjoined the Forest Service from implementing the Project and remanded the case to the Forest Service so that it could prepare a supplemental EIS.

Both parties appealed, but they then voluntarily dismissed those appeals after a wildfire swept through the Project Area and the Forest Service formally withdrew the Project from implementation.

The Forest Service then moved this Court to vacate its judgment. The Court granted the motion but determined that the vacatur would not impact the question of whether the plaintiffs are entitled to attorney's fees.

## SUMMARY CONCLUSION

Attorney's fees are awarded to the plaintiffs, but not the amount that the plaintiffs request. Excluded are any fees or costs associated with (1) the Appeals Reform Act claim, (2) the ESA claims, and (3) the motion to strike. As the Forest Service notes, the plaintiffs have not specifically identified how many hours were spent on the Appeals Reform Act and ESA claims. The plaintiffs are ordered to submit a supplemental affidavit deducting those hours and then proportionally adjusting the fees on fee award. The Forest Service may then file a supplemental response.

Moreover, in its supplemental affidavit, the plaintiffs need calculate their revised fee award using the following dates and rates:

|  | 2010 District Court | 2011 District Court | 2012 District Court | 2012 Ninth Circuit | Administrative Tasks | Fee petition |
|---|---|---|---|---|---|---|
| Bechtold | N/A | $270 | $280 | $183.73 | N/A | $183.73 |
| Smith | $200 | $210 | $220 | $183.73 | $75 | $183.73 |

A plaintiff is entitled to its attorney's fees under the Equal Access to Justice Act only if the plaintiff is a "prevailing party." 28 U.S.C. § 2412(d)(1)(A). Even if a plaintiff is a prevailing party, though, fees are not awarded if the government shows that its position was "substantially justified" or that "special circumstances make an award unjust." *Id.*; *United States v. Milner*, 583 F.3d 1174, 1196 (9th Cir. 2009).

## ANALYSIS

The plaintiffs are entitled to attorney's fees because: (1) they are prevailing parties and (2) the Forest Service's positions were not substantially justified, and there are no special circumstances that would make an award unjust. The plaintiffs' proposed award, though, must be modified to reflect the accurate hours and rates as set forth above.

## I. Prevailing parties

When a party prevails at the district court, the party is still a "prevailing party" for purposes of an attorney's fees award even if the case becomes moot on appeal. *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196–97 (9th Cir. 2007); *Williams v. Alioto*, 625 F.2d 845, 847–48 (9th Cir. 1980); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009); *Kirk v. N.Y. St. Dept. of Educ.*,

644 F.3d 134, 139 n.4 (2d Cir. 2011); *Thomas v. Bryant*, 614 F.3d 1288, 1295 (11th Cir. 2010). So, here, when this case became moot on appeal and the Court vacated the judgment, there is no bar to an award of attorney's fees. But, as a threshold matter, the plaintiffs must show that they prevailed here for an award to be appropriate. *See UFO*, 508 F.3d at 1196–97.

A party is a "prevailing party" when: "(1) it wins on the merits of its claim (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff." *Id.* at 1197 (citations and internal quotation marks omitted). "A party has 'prevailed on the merits of at least some of (their) claims,' [*Hanrahan v. Hampton*, 447 U.S. 754, 758 (1980) (per curiam)] when it has obtained a preliminary injunction that results in a direct and substantial benefit." *Id.* (citations omitted).

The question, then, is—For the time period before the case was moot, did the party obtain the desired relief and did that relief directly benefit the plaintiff through a material alteration of the legal relationship between the parties? *See id.* In this case, the answer to that question is "Yes."

The Ninth Circuit explained for there to be a direct benefit from an injunction, the behavior enjoined must have been occurring at the time the

injunction was issued or there must have been an imminent threat of its occurrence. *Martinez v. Wilson*, 32 F.3d 1415, 1423 (9th Cir. 1994).

In *Williams*, for example, the plaintiffs obtained a preliminary injunction against certain types of "pat down" searches. 625 F.2d at 847. The case was mooted on appeal, though, because law enforcement stopped conducting those types of searches. *Id.* But the Ninth Circuit still held that the plaintiffs were prevailing parties because they enjoyed the benefit of the preliminary injunction before it became moot. The court reached a different result in *UFO*, though, because, there, the injunction was stayed on appeal. 508 F.3d at 1198. So the plaintiff did not reap any benefit from the injunction. *Id.*[1]

---

[1] The Forest Service further points to a Tenth Circuit case—*Biodiversity Conservation Alliance v. Stem*, 519 F.3d 1226 (10th Cir. 2008)—to support its argument, but that case has little bearing here. The factual background in *Biodiversity Conservation Alliance*, at least, is strikingly similar to the facts here. There, a conservation group challenged a timber sale, the district court issued an injunction, and a fire later mooted the case. *Id.* at 1228. Procedurally, though, the cases are different in important ways. In *Biodiversity Conservation*, the plaintiffs obtained only a preliminary injunction and the district court made no ruling on the merits of the plaintiffs' claims. *Id.* For these reasons alone, the Tenth Circuit held that the plaintiffs were therefore not prevailing parties. *Id.* at 1228–32. The facts here are different: The plaintiffs obtained a permanent injunction that was based on a determination of the merits, partly in the plaintiffs' favor. The Tenth Circuit noted in its opinion that "a judgment on the merits or a court-ordered consent decree would provide [the plaintiffs] with precisely the ammunition it currently lacks." *Id.* at 1230. In other words, had the plaintiffs obtained an injunction similar to the one that the plaintiffs here obtained, then the Tenth Circuit might have reached a different conclusion.

Here, the injunction benefitted the plaintiffs through a material alteration of the legal relationship between the plaintiffs and the Forest Service. In the parties' Case Management Report, the Forest Service represented that "the anticipated beginning implementation date for ground-disturbing activities for the Forest Service project challenged in this litigation [was] no sooner than April 1, 2012." (Doc. 8 at 4.) The permanent injunction was issued on March 26, 2012—a week before the Project was set to begin. The injunction directly benefitted the plaintiffs because it stopped the Project from moving forward, which, by the Forest Service's own account, was "an imminent threat" when the injunction was issued. *See Martinez*, 32 F.3d at 1423. There is little doubt that the injunction modified the Forest Service's behavior. Before the injunction was issued, the Forest Service was free to proceed with the Project and, indeed, was planning to do so on April 1, 2012. The injunction changed that—the Forest Service was no longer permitted to move forward with the Project.

The Forest Service insists the plaintiffs did not directly benefit from the injunction because the Service would not have been able to implement much of the Project before the fire swept through the Project Area. Even if that is the case, it is speculation at this point. What we know for certain is the injunction stopped the Project, which is the relief that the plaintiffs sought. The fire later mooted the

dispute but that does not undermine the conclusion.

The plaintiffs are prevailing parties for purposes of an attorney's fees award.

## II. Substantial justification

Even if a plaintiff is a prevailing party, a court will not award a plaintiff its attorney's fees if the government can show that its positions were "substantially justified." 28 U.S.C. § 2412(d)(1)(A). "Substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The definition is the same as the "reasonable basis both in law and fact formulation adopted by the Ninth Circuit and the vast majority of other courts of appeals that have addressed this issue." *Id.* (citations and internal quotation marks omitted). "Put another way, substantially justified means that there is a dispute over which reasonable minds could differ." *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). As to the issues on which the plaintiffs here prevailed, the Forest Service's positions were not substantially justified.

### A. Issues on which the plaintiffs prevailed

Here an order that partially granted summary judgment in favor of the plaintiffs was granted because the Forest Service: (1) failed to explain why it analyzed road density only at the Project level and ranger-district level, (2) failed

to explain why it applied the road-density standard to only Forest lands, (3) failed to analyze road density during Project implementation, (4) failed to identify the stormwater discharge permits that it might need to obtain for the Project, and (5) failed to solicit comments on those permits from state agencies. The Forest Service's positions with respect to these issues were not substantially justified.

### 1. Road density unit of analysis

The Ninth Circuit has clearly expressed that "the choice of analysis scale must represent a reasoned decision and cannot be arbitrary." *Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 973–74 (9th Cir. 2002). Here, the Forest Service's own scientist specifically determined that, "[t]o be biologically meaningful, analysis unit boundaries should be defined by the elk herd home-range . . ., and more specifically by the local herd home-range during hunting season." The Service, though, applied two different units of analysis—the Project Area and the Ranger District—without explanation. Its error is not substantially justified because reasonable minds could not dispute the impropriety of the Forest Service's action.

### 2. Road density analysis of private lands

For the same reasons, the Forest Service's failure to apply the road-density standard to private lands was not substantially justified. The Service's scientist,

upon whom the Service relied, stated that "[a]nalysis units should not be adjusted for land ownership; instead they should reflect the cumulative habitat conditions perceived by elk." The Service, though, adjusted its analysis for land ownership because it excluded private lands from its analysis. It provided no explanation for this choice, and it is therefore not defensible.

### 3. Road density analysis of temporary roads

The Forest Service's final error with respect to elk habitat is that it failed to analyze how temporary road construction during the Project would impact road density. The Service's failure to conduct this analysis was not substantially justified. As was explained in the summary judgment order, temporary roads constructed during a Project are not excluded from the road-density standard. *Native Ecosystems Council*, 848 F. Supp. 2d at 1218–19. Indeed, the Service's own scientists stated that those roads should be analyzed. *Id.* Whether the Service should have done so, then, is not reasonably in dispute.

### 4. Identification of stormwater discharge permits

The plaintiffs also prevailed on their claim that the Forest Service needed to comply with federal regulations by identifying stormwater discharge permits that it might need to obtain for the Project. At the time the Draft EIS was completed, the Ninth Circuit had expressly held:

"[S]tormwater runoff from logging roads that is collected by and then discharged from a system of ditches, culverts, and channels is a point source discharge for which [a National Pollutant Discharge Elimination System] permit (''discharge permit'' or ''NPDES permit'') under the federal Clean Water Act] is required.''

*N.W. Envtl. Def. Ctr. v. Brown,* 617 F.3d 1176, 1198 (9th Cir.2010), *withdrawn and superseded,* 640 F.3d 1063 (9th Cir. 2011). Federal regulations require agencies to identify these permits in the Draft EIS, if the permits might be necessary. The Forest Service, though, did not do so here. As was explained in the summary judgment order, there was no justifiable reason for this omission. *See Native Ecosystems Council*, 848 F. Supp. 2d at 1223–24.

### 5.   Solicitation of stormwater runoff comments from state agencies

After the Forest Service prepared the Draft EIS, the regulations required it to "[r]equest the comments of . . . [a]ppropriate State . . . agencies which are authorized to develop and enforce environmental standards." 40 C.F.R. § 1503.1(2)(a)(i). Again, the Service did not do this, and it has not provided a reasoned explanation for why it did not make this request. *Native Ecosystems Council*, 848 F. Supp. 2d at 1225. Its position is, therefore, not substantially justified.

### B.   The Forest Service's response

The Forest Service maintains that its litigation positions with respect to each

of these issues were substantially justified.

The Forest Service first takes the position that its litigation posture regarding its analysis of elk habitat was reasonable. That position, according to the Service's response brief, was as follows: The Forest Service did not violate NEPA or NFMA because the Forest Plan did not contain a specific elk habitat standard. That was not a reasonable position.

While the Forest Service had not adopted a specific standard for elk habitat, it still had to describe the "quantity and quality of habitat" necessary to sustain elk viability. *Native Ecosystems Council*, 848 F. Supp. 2d at 1213. The only criteria that the Forest Service employed to perform this analysis were the so-called "indicators"—the indicators for canopy cover and road density. The Forest Service called these criteria "indicators," but, as explained in the summary judgment order, they are mandatory standards. *Id.* at 1213–14. Any suggestion to the contrary is not reasonable: The so-called "indicators" were binding on the Forest Service, and they failed to correctly apply them. *Id.* at 1213–19.

Nor is there a reasonable dispute concerning the Forest Service's treatment of stormwater discharge. The Service counters that it reasonably argued that it was not certain whether the Project would require permits or consultation with the Montana Department of Environmental Quality. That might be true. But even if

there was uncertainty, the Service still had to identify permits that might be necessary and still had to consult with the Department of Environmental Quality. *See N.W. Envtl. Def. Ctr.*, 617 F.3d at 1198; *N.W. Envtl. Def. Ctr.*, 640 F.3d 1063; 40 C.F.R. § 1502.25(b); 40 C.F.R. § 1503.1(a)(2)(i). This was the law at the time the Service issued its Draft EIS, and it did not change. The U.S. Supreme Court has granted the government's petition for a writ of certiorari in *Northwest Environmental Defense Center*, but the Court has not yet issued its decision, nor has the judgment of the underlying case been stayed. In short, the Forest Service failed to follow the law, and there was no reasonable justification for that failure.

## III.    Special circumstances

A Court may not award attorney's fees under the Equal Access to Justice Access where "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Forest Service claims that fees should not be awarded here because the plaintiffs did not receive any appreciable benefit from the litigation on account of the wildfire. Once again their position is in error.

The Forest Service bears the burden of showing that special circumstances exist to make an award unjust. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001).

The "special circumstances" exception to the mandatory award of

attorney fees when the government's position was not substantially justified was developed to ensure that the government is not deterred from advancing good faith but novel legal arguments and to protect the court's discretion to rely on equitable factors in denying a fee award.

*Abela v. Gustafson*, 888 F.2d 1258, 1266 (9th Cir. 1989) (citing H.R. Rep. No. 96-1418 at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4953, 4990).

Here, the wildfire mooted the appeal, but it is not a special circumstance that should preclude an award of attorney's fees. Contrary to the Forest Service's argument, the plaintiffs did achieve an appreciable benefit, even if it was short-lived. The plaintiffs sought and obtained a permanent injunction that prevented the Forest Service from moving forward with or implementing the Project from March 25, 2012, when the injunction was issued, to June 25, 2012,  when the fire started in the Project Area. As noted above, Project implementation was set to begin on April 1, 2012.

If anything, the equities weigh in favor of the plaintiffs. They incurred fees throughout the course of this mostly successful litigation, and they should not be denied those fees merely by the happenstance of a wildfire. The fact that litigation becomes moot does not necessarily imply that an award of attorney's fees under the Equal Access to Justice Act are precluded. *See e.g. UFO Chuting of Hawaii, Inc.*, 508 F.3d 1189.

Since there are no special circumstances and the Forest Service's positions were not substantially justified, the plaintiffs are entitled to their attorney's fees under the Equal Access to Justice Act.

## IV.    Amount of attorney's fees

When a court awards attorney's fees, it must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The lodestar method provides "the most useful starting point for determining the amount of a reasonable fee . . . ." *Id.* at 433. That calculation requires a court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* The Forest Service insists that the hourly rates and the number of hours claimed by the plaintiffs are both excessive. That position is justified to a limited extent.

### A.    Hourly rates

A court may award fees under the Equal Access to Justice Act in excess of $125 per hour only if "the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit publishes a schedule of hourly rates adjusted for cost of living. *See* United States Court of Appeals for the Ninth Circuit, *Statutory Maximum Rates Under the Equal Access to Justice Act*, http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (accessed

15

December 18, 2012). Those rates are: $183.73 for work performed in 2012, $180.59 for work performed in 2011, and $175.06 for work performed in 2010. These rates may be further increased if a "special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

The plaintiffs claim that the Ninth Circuit previously applied an enhanced rate to Mr. Bechtold's and Ms. Smith's hourly rates in a similar case based on special factors. That case is *Hapner v. Tidwell*, CV 08–92–M–DWM (D. Mont.). The rates that the plaintiffs point to appear in the Ninth Circuit Appellate Commissioner's May 22, 2012 order. (*See Hapner*, Ex. 1, doc. 51-1.) While binding between the parties in *Hapner*, the Appellate Commissioner's decision has no precedential effect in this case or future cases. *See* Ninth Cir. R. 33-1, cmt. c. Nevertheless, it has some value.

*Hapner* originated in this Court, and it was a very similar case to this one, involving similar issues and law. Mr. Bechtold, who co-represents the plaintiffs in this case, co-represented the plaintiffs in *Hapner*, as did Ms. Smith.

The Commissioner in *Hapner* provided a detailed analysis of why he believed special factors were present. He concluded that Mr. Bechtold and Ms. Smith possessed distinctive knowledge and specialized skill in environmental law and that such knowledge and skill was needed for the litigation and was not

available elsewhere at the statutory rate. (*See Hapner*, Ex. 1, doc. 51-1 at 7 (citing *Nadarajah*, 569 F.3d at 912).) The Commissioner pointed to Mr. Bechtold's and Ms. Smith's specialized education and previous experience in the environmental and natural resource fields. He approved rates of $190 for Ms. Smith's district court representation in 2009, $225 for her appellate representation in 2010, $250 for Mr. Bechtold's district court representation in 2009, and $350 for his appellate representation in 2010. The Forest Service did not dispute that: (1) Ms. Smith and Mr. Bechtold were entitled to enhanced fees and (2) that the rates above were in line with prevailing market rates.

The Commissioner's analysis is ostensibly persuasive, so the Commissioner's figures are used as a starting point for the award here. In this case, Mr. Bechtold and Ms. Smith want to apply the following rates:

|  | 2010 District Court | 2011 District Court | 2012 District Court | 2012 Ninth Circuit | Administrative Tasks | Fee petition |
|---|---|---|---|---|---|---|
| Bechtold | N/A | $270 | $280 | $370 | N/A | $183.73 |
| Smith | $200 | $210 | $220 | $245 | $75 | $183.73 |

Mr. Bechtold and Ms. Smith support their request with their declarations, as well as declarations from two experienced practitioners of environmental law in Montana: Matthew Bishop and Jack Tuholske. Those declarations tend to show

that there were no attorneys available to the plaintiffs in this case at the statutory maximum rates.

The Forest Service claims that these rates are unreasonable for two primary reasons. First, the Service argues that the rates should be based on a March 31, 2009 order from this Court in *Hapner.* There, this Court awarded attorney's fees at a rate of $175 per hour for Mr. Bechtold and $115 per hour for Ms. Smith. But, as the plaintiffs correctly argue and the Appellate Commissioner explained, in his view this Court miscalculated those rates. (*See Hapner*, Ex. 1, doc. 51-1 at 13–15.)

Second, the Forest Service argues that the Court should not apply an enhanced appellate rate because there was no merits briefing or oral argument before the Ninth Circuit. Here they are right. The plaintiffs have not shown that there were any filings at the Ninth Circuit that required any specialized knowledge. Consequently the hourly rate that applies is $183.73 to Mr. Bechtold and Ms. Smith's appellate work.

The Forest Service filed two declarations in support of its arguments, but one of the declarations is more than four-and-a-half years old and the other is nearly four years old. (*See* docs. 58-3 and 58-4.) Neither of the affidavits have anything to do with this litigation, and they are outdated on their face. Nor are they old enough to qualify as ancient documents. Rule 803(16) F. R. Evid. A party

opposing an attorney's fee award must come forward with affidavits or other evidence of its own regarding legal rates in the community. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "'In the absence of opposing evidence, the proposed rates are presumed reasonable.'" *Velez v. Wynne*, 220 Fed. Appx. 512 (9th Cir. Jan. 29, 2007) (quoting *Cortes v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005)). Here, the Forest Service has provided only stale, unhelpful, affidavits.

For this case the following rates apply to the plaintiffs' attorney's fees award:

|  | 2010 District Court | 2011 District Court | 2012 District Court | 2012 Ninth Circuit | Administrative Tasks | Fee petition |
|---|---|---|---|---|---|---|
| Bechtold | N/A | $270 | $280 | $183.73 | N/A | $183.73 |
| Smith | $200 | $210 | $220 | $183.73 | $75 | $183.73 |

## B. Hours billed

The Forest Service argues that any attorney's fee award should be reduced for several reasons: (1) the Court should not award fees for claims on which the plaintiffs did not prevail, (2) the Court should not award fees for work done in opposing the Service's motion to strike, and (3) the Court should deny or reduce a "fees on fees" award. The Forest Service is partly correct in this argument.

### 1. Unsuccessful claims

The gold standard for analyzing the reasonableness of an attorney's fees award under the Equal Access to Justice Act is the U.S. Supreme Court's decision in *Hensley*, 461 U.S. 424. *Costa v. Commr. of Social Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) ("This court applies the principles set forth in *Hensley*—and other cases interpreting 42 U.S.C. § 1988—to determine what constitutes a reasonable fee award under the EAJA." (citation omitted)). The Supreme Court expressly held in *Hensley* that when a plaintiff has obtained "excellent results" a court must award attorney's fees for all claims—even those that were unsuccessful—if the claims are related to the result. *Hensley*, 461 U.S. at 435; *accord Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011). In other words, the focus of the inquiry is the result that the plaintiff obtained, not the specific claims on which it prevailed. *Id.* A court, though, should not award attorney's fees for claims that not related in fact or law to the result. *Id.*

### a. Claims under NFMA and NEPA

Here, all of the plaintiffs' claims under NEPA and NFMA are related. Some of the claims involved different species and different management standards, but they sought the same result—an injunction enjoining the Project. And they involved the same set of underlying facts and the same legal frameworks. The fact

20

that the plaintiffs prevailed on only some of their NEPA and NFMA claims does

not preclude an attorney's fees award for all of those claims. *Id.*

### b. Claims under the Appeals Reform Act and the Endangered Species Act

The plaintiffs also advanced claims under the Appeals Reform Act and the

Endangered Species Act ("ESA"), but they abandoned both at the summary

judgment stage.

As to the Appeals Reform Act, the plaintiffs claimed that "The Forest

Service violate[d] the Appeals Reform Act regulations by allowing Plaintiffs'

administrative appeals to be decided by an officer subordinate to the officer

required by the regulations." (Second Amended Complaint, doc. 9 at 24–28.) The

plaintiffs abandoned this claim at the summary judgment stage. (*See* Summary

Judgment Order, doc. 36–37 n.2.) Even so, that claim is unrelated to the result that

the plaintiffs obtained in this case. The claim is based on distinct facts and law that

have nothing to do with the plaintiffs' successful claims. The plaintiffs do not

challenge the Forest Service's assertion that their Appeals Reform Act claim is

unrelated. The plaintiffs are not entitled to fees for this claim.

The plaintiffs also abandoned their ESA claims at the summary judgment

stage. (*See* Summary Judgment Order, doc. 36–37 n.2.) The Forest Service argues

that these claims are unrelated and, even if they were related, fees are not available for them under the Equal Access to Justice Act. The plaintiffs do not dispute either of these contentions.

Attorney's fees for ESA claims are not expressly governed by the Equal Access to Justice Act because the ESA itself contains an attorney's fees provision. That being said, the Ninth Circuit applies the Equal Access to Justice Act standard to ESA claims. *Marbled Murrelet v. Babbitt*, 182 F.3d 1091 (9th Cir. 1999), *cert. denied*, 528 U.S. 1115 (2000); *see generally S. Yuba River Citizens League & Friends of the River v. Natl. Marine Fisheries Serv.*, 2012 WL 1038131, at *2–*4 (E.D. Cal. Mar. 27, 2012).[2]

Applying the Equal Access to Justice Act standard, the Court does not award attorney's fees for the ESA claims because they are not related to the result that the plaintiffs obtained. The plaintiffs alleged in their complaint that both the Project and the Forest Plan violate the ESA. In particular, they claimed that the

---

[2] There is some dispute as to whether the Ninth Circuit has read in an additional "substantial contribution" requirement for ESA claims—i.e., attorney's fees are appropriate only if the plaintiff "contributed substantially to the goals of the ESA." *See generally S. Yuba River Citizens League*, 2012 WL 1038131, at *2–*4. The Court need not resolve whether that requirement applies, though, because the ESA claims are not related to the result that the plaintiffs achieved and attorney's fees are not appropriate, regardless of whether the "substantial contribution" requirement applies.

U.S. Fish and Wildlife Service's cumulative effects analysis for the Project was incomplete and that both the Fish and Wildlife Service and the Forest Service failed to consult and prepare a number of required documents for the Custer Forest Plan. The plaintiffs voluntarily abandoned these claims at the summary judgment stage. *See Native Ecosystems Council*, 848 F. Supp. 2d at 1210 n.1. And the merits of these claims have nothing to do with the result that the plaintiffs obtained. As such there is no award of attorney's fees for the Endangered Species Act claims.

### 2. The Forest Service's motion to strike

The Forest Service also claims that the plaintiffs should not be compensated for their work in opposing the Service's motion to strike the plaintiffs' 15 summary judgment exhibits. The plaintiffs, on the other hand, argue that they should be compensated for this work, even though the Court granted the Service's motion and struck the exhibits.

The plaintiffs claim: "The Ninth Circuit holds that . . . a plaintiff should be compensated for time expended on unsuccessful motions en route to an ultimate success on the merits because '[l]awsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.' *Cabrales v. Co. of L.A.*, 935 F.2d 1050, 1053 (9th Cir. 1991)." (Pls.'

Reply Br., doc. 61 at 15.)

There are a several problems with the plaintiffs' claims. First, the plaintiffs did not file an "unsuccessful motion." They attached several extra-record exhibits to their summary judgment brief without moving to supplement the record. Second, as was explained in the summary judgment order, the plaintiffs were not permitted to attach these exhibits as an end run around the rules governing supplementation. This was not a "reasonably disputed issue[ ]." *See Cabrales*, 935 F.2d at 1053. Third, in *Cabrales*, the Ninth Circuit held only that "[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Id.*; *see also id.* ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings.") Improperly attaching exhibits to a summary judgment brief was hardly a "necessary step" to the plaintiffs' "ultimate victory" on the issues upon which they prevailed. *See id.* And, unlike the plaintiffs in *Cabrales*, the plaintiffs here did not "ultimately win[ ]" on the particular issue—i.e., the motion to strike—that resulted in an adverse ruling.

There is no award of attorney's fees for the plaintiffs' work in opposing the Forest Service's motion to strike.

### 3.      Fee petition

Finally, the Forest Service argues the Court should reduce or deny attorney's fees for the plaintiffs' work on their attorney's fees petition. The Service argues that the plaintiffs are not prevailing parties and, even assuming they are, the "fees-on-fees" award "should be reduced by the proportion of attorneys' fees actually awarded on the underlying litigation to attorneys' fees requested." (Defs.' Response Br., doc. 58 at 37 (citing *Thompson v. Gomez*, 45 F.3d 1365, 1367–68 (9th Cir. 1995); *Luna v. Hoa Trung Vo.*, 2011 WL 2078004 at *11–12 (E.D. Cal. May 25, 2011)).)

As discussed above, the plaintiffs are, in fact, prevailing parties for purposes of the attorney's fees award. So the Forest Service's first argument fails.

As to the second argument—that the fees-on-fees award should be proportionally reduced—the Service is correct. The Ninth Circuit holds that an award for fees on fees should be proportionally reduced in accordance with the fees awarded to the plaintiffs. In other words, if the Court discounts the plaintiffs' merits fees request by 30%, then it should discount the fees on fees award by 30%. *See Thompson*, 45 F.3d at 1367–68.

The plaintiffs, in their supplemental affidavit, are ordered to provide a proposed calculation of this discount.

**CONCLUSION**

Here the plaintiffs are awarded their attorney's fees, but not the amount that they request. Specifically excluded are any fees associated with (1) the Appeals Reform Act claim, (2) the ESA claims, and (3) the motion to strike. The plaintiffs have not specifically identified how many hours were spent on the Appeals Reform Act and ESA claims. The plaintiffs must submit a supplemental affidavit deducting those hours and then provide a proposed discount of the fees-on-fee award.

For purposes of its supplemental affidavit, the plaintiffs must calculate the revised fee award using the following rates:

| | 2010 District Court | 2011 District Court | 2012 District Court | 2012 Ninth Circuit | Administrative Tasks | Fee petition |
|---|---|---|---|---|---|---|
| Bechtold | N/A | $270 | $280 | $183.73 | N/A | $183.73 |
| Smith | $200 | $210 | $220 | $183.73 | $75 | $183.73 |

IT IS ORDERED that the plaintiffs shall file their supplemental affidavit, consistent with this order, no later than 14 days after the date of this order.

IT IS FURTHER ORDERED that the defendants shall file their supplemental response no later than 14 days after the plaintiffs file their supplemental affidavit.

Dated this 4th day of February 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT